UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SONYA SMITH

                          Plaintiff,

v.                                                                8:15-CV-0714
                                                                 (GTS)

CAROLYN W. COLVIN
Acting Commissioner of Social Security,

                          Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

OFFICE OF MARK A. SCHNEIDER           MARK A. SCHNEIDER, ESQ.
  Counsel for Plaintiff
57 Court Street
Plattsburgh, NY 12901

U.S. SOCIAL SECURITY ADMIN.             SANDRA M. GROSSFELD, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

**<u>DECISION and ORDER</u>**

        Currently before the Court, in this Social Security action filed by Sonya Smith ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 19.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born on January 24, 1974. Plaintiff completed one year of college, and has past work as a secretary. Generally, Plaintiff's alleged disability consists of degenerative disc disease, back injury, spinal stenosis, herniated discs, numbness in the hands and legs, ulcerative colitis, frequent kidney stones, bones spurs, facet joint arthritis, and severe chronic pain.

   B.   **Procedural History**

On May 7, 2012, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning January 1, 2012. Plaintiff's application was initially denied on July 25, 2012, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). On July 17, 2013, Plaintiff appeared in a video hearing before the ALJ, Dale Black-Pennington. (T. 30-73.) On January 22, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 16-29.) On May 29, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

   C.   **The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 21-25.) First, the ALJ found that Plaintiff met the insured status requirements through September 30, 2014, and has not engaged in substantial gainful activity since January 1, 2012, the alleged onset date. (T. 21.) Second, the ALJ found that Plaintiff's back disorder, history of kidney stones, and ulcerative colitis are severe impairments, but that Plaintiff's migraine headaches are not a severe impairment. (*Id.*) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of

the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings"). (T. 22.) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)[1] except that Plaintiff can only occasionally stoop, crouch, crawl, and kneel; requires access to a handicap restroom; and is able to perform frequent, but not repetitive or continuous, handling and fingering. (T. 22-25.) Fifth, and finally, the ALJ found that Plaintiff can perform her past relevant work as a secretary. (T. 25).

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff makes four arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that she does not have the RFC to perform light work, or even sedentary work, due to the combination of her impairments, the side effects of her medications, and her exertional and nonexertional limitations. (Dkt. No. 12, at 14-18 [Pl.'s Mem. of Law].) Within this argument, Plaintiff appears to argue that the ALJ failed to find that Plaintiff's migraine headaches are a severe impairment, and failed to assess the severity of Plaintiff's obesity, alone and in combination with her other impairments. (*Id.*) Second, Plaintiff argues that the ALJ erred by not crediting an accurate hypothetical RFC given to the vocational expert in determining that Plaintiff could perform her past relevant work as a secretary. (*Id.* at 18-19.) Third, Plaintiff argues that the ALJ erred by affording more weight to the opinion of consultative examiner Nader Wassef, M.D., than any treating source opinion. (*Id.* at 19-24.) Fourth, and finally, Plaintiff argues that the ALJ erred by not crediting her testimony regarding her limitations in the credibility analysis. (*Id.* at 24-27.)

---

[1] Light work requires the abilities to sit for six hours, stand or walk for six hours, lift up to 20 pounds at a time, and frequently lift or carry up to ten pounds during an eight-hour workday. 20 C.F.R. §§ 404.1567(b), 416.927(b); SSR 83-10, 1983 WL 31251 (1983).

Defendant makes five arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ properly evaluated the evidence of record. (Dkt. No. 19, at 5 [Def.'s Mem. of Law].) Second, Defendant argues that Plaintiff's subjective complaints do not establish that her RFC is more restricted than that found by the ALJ. (*Id.* at 5-6.) Third, Defendant argues that Plaintiff's assertions that each of her impairments establishes that the RFC is incorrect is not supported by the record. (*Id.* at 8-12.) Fourth, Defendant argues that the ALJ properly assessed the opinion of consultative examiner Dr. Wassef. (*Id.* at 11-12.) Fifth, and finally, Defendant argues that the ALJ proffered a correct hypothetical to the vocational expert. (*Id.* at 12.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an

5

> impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and consolidated below.

### A. Whether the ALJ Erred in Assessing the Medical Opinion Evidence in Determining the RFC

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 12, at 19-24 [Pl.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other sources, such as physicians' assistants, to show how a claimant's impairments may affect his or her ability to work. 20 C.F.R. §§ 404.1513(c)(d), 416.913(c)(d). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Under the "treating physician's rule," controlling weight is afforded to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, or when assessing a medical opinion from another source, the ALJ should consider the following factors

7

to determine the proper weight to afford the opinion: (1) the source's examination relationship and treatment relationship with the plaintiff, including the length, nature, and extent of the treatment relationship, if applicable, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case record. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Halloran*, 362 F.3d at 32 (listing regulatory factors).

Plaintiff argues that the ALJ failed to afford weight to any of the treating source opinions of record. (Dkt. No. 12, at 20-23 [Pl.'s Mem. of Law].) More specifically, Plaintiff argues that the findings of medical sources constitute medical opinions under the treating physician rule, and the ALJ failed to weigh the following evidence: (1) a radiology report from an MRI examination of Plaintiff's spine in March 2010, (2) treatment notes from treating primary care physician, Robert Luebbers, M.D., at South Burlington Family Practice, (3) emergency room treatment records from attending sources at CVPH Medical Center, (4) examination notes from physician assistant Grigorios Delaportas, P.A., at Tilly Spine Institute, and (5) treatment notes from treating gastroenterologist Eric Ganguly, M.D., from FAHC Gastroenterology. (*Id.* at 23-24.)

Social Security regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of . . . [a plaintiff's] impairment(s), including . . . [a plaintiff's] symptoms, diagnosis and prognosis, what . . . [a plaintiff] can still do despite impairment(s), and . . . [a plaintiff's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

The MRI report, examination notes, and treatment notes that Plaintiff cited above contain records of Plaintiff's symptoms and diagnoses without judgments regarding what Plaintiff can or

8

cannot do relative to her diagnoses and symptoms. Accordingly, these medical records do not constitute medical opinions, and the ALJ was not required to afford weight to the records. *Id.* Nonetheless, the ALJ has an affirmative duty to develop a claimant's complete medical history. 20 C.F.R. §§ 404.1512(d), 416.912(d); *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009). Moreover, an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a claimant's treating physician, including an assessment of the claimant's functional capacity, in order to afford the claimant a full and fair hearing. *See Smith v. Astrue*, 896 F. Supp. 2d. 163, 176 (N.D.N.Y. 2012) (citing 20 C.F.R. § 404.1512[e]; *Devora v. Barnhart*, 205 F. Supp. 2d 164, 174 [S.D.N.Y. 2002] [collecting cases]); *Hardhardt v. Astrue*, No. 05–CV–2229, 2008 WL 2244995, at *9 (E.D.N.Y. May 29, 2008).

Medical reports should include (1) medical history, (2) clinical findings, (3) laboratory findings, (4) diagnosis, (5) treatment prescribed with response and prognosis, and (6) a statement about what the plaintiff can still do despite his or her impairments based on the findings set forth in factors (1) through (5). 20 C.F.R. §§ 404.1513(b), 416.913(b). The statement about what a plaintiff can still do despite his or her impairments should include an acceptable medical source's opinion about the plaintiff's ability "to do work-related activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling." 20 C.F.R. §§ 404.1513(c)(1), 416.913(c)(1).

Here, consultative examiner Nader Wassef, M.D., provided the only acceptable medical source opinion addressing Plaintiff's physical work-related abilities and limitations. (T. 359-64.) On June 29, 2012, Dr. Wassef diagnosed Plaintiff with multiple physical impairments including hypertension; obesity; migraine headaches; ulcerative colitis; diarrhea; numbness in the bilateral hands and bilateral feet (attributed to back injury); constant mid-back to lower-back pain

9

(attributed to degenerative disc disease, herniated discs, arthritis, and spinal stenosis); history of nephrolithiasis (with multiple kidney stone and kidney surgeries); and history of cholecystectomy (surgical removal of gallbladder). (T. 361, 364.)

Dr. Wassef's medical source statement opined that Plaintiff should have access to a handicapped bathroom. (T. 364.) Additionally, Dr. Wassef's medical source statement indicated that Plaintiff suffered from migraine headaches, experienced numbness in her hands and feet attributed to her back injury, and experienced constant mid-back to lower-back pain. (*Id.*)

In determining Plaintiff's RFC, the ALJ afforded great weight to Dr. Wassef's opinion that Plaintiff should have access to a handicap bathroom, and noted that this was Dr. Wassef's only opinion. (T. 24.) The ALJ further noted that, while Dr. Wassef "acknowledged the claimant's pain, he did not address the significance of such or provide an assessment regarding the claimant's functioning as a result." (*Id.*) However, the ALJ did not recontact Dr. Wassef for clarification, or to obtain a complete opinion of Plaintiff's work-related abilities and limitations.

Recontacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record. 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1). An ALJ is not required to seek additional information absent "obvious gaps" in the administrative record that preclude an informed decision. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). However, additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1520b(c)(1)-(4), 416.920b(c)(1)-(4); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

Moreover, an ALJ "is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *accord, Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999). Therefore, an ALJ cannot assess a plaintiff's RFC based on the ALJ's own interpretation of the medical evidence. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (holding that an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion").

Accordingly, the ALJ's RFC determination was not supported by substantial evidence because there was no acceptable medical source opinion indicating that Plaintiff could perform the physical requirements of the RFC, including sitting for six hours, standing or walking for six hours, occasionally lifting up to 20 pounds at a time, and frequently lifting or carrying up to ten pounds during an eight-hour workday. *See Balsamo*, 142 F.3d at 81-82 (finding that the ALJ's determination that the plaintiff could perform sedentary work was not supported by substantial evidence in the absence of a medical opinion indicating that the plaintiff could perform sedentary work)*; Larkin v. Colvin,* 13-CV-0567*,* 2014 WL 4146262, at *9 (N.D.N.Y. Aug. 19, 2014) (holding that remand was required where the record lacked a broad assessment of Plaintiff's physical functional limitations from an acceptable medical source); *House v. Astrue*, 11-CV-915, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (holding that remand was required where there was no medical source opinion supporting the ALJ's RFC determination); *Santiago v. Colvin*, 10-CV-1510, 2016 WL 1049011, at *7 (N.D.N.Y. March 14, 2016).

The Court recognizes that, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *House,* 2013 WL 422058, at *4*.* However, as noted above, that is not the case in the present matter because the ALJ determined that Plaintiff's back

11

disorder, history of kidney stones, and ulcerative colitis were severe impairments. (T. 21.) Further, the ALJ found that "the record confirms a long history of [Plaintiff's] lower back problems associated with spondylolisthesis dating back more than five years prior to the alleged date of disability." (T. 23.)

For these reasons, remand is necessary for the ALJ to recontact consultative examiner Dr. Wassef and/or one of Plaintiff's treating physicians, such as Dr. Luebbers, to obtain at least one complete medical opinion of Plaintiff's physical functional abilities and limitations. Accordingly, remand is also required for the ALJ to (1) reevaluate Plaintiff's RFC; (2) perform a new credibility analysis; and (3) reassess whether Plaintiff can perform her past relevant work, or other existing work in the national economy, based on a fully developed record. Therefore, the Court need not, and will not, reach Plaintiff's remaining arguments regarding the ALJ's credibility analysis and the ALJ's determination that Plaintiff can perform her past relevant work as a secretary.

### B. Whether the ALJ Erred in Assessing the Severity of Plaintiff's Migraine Headaches and Obesity

After carefully considering the matter, the Court answers this question in the affirmative in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 12, at 19-24 [Pl.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

According to Social Security Regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). The regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," with examples including the following: (1) physical functions such as walking, standing, lifting, pushing, pulling, carrying or handling; (2) capacities for seeing, hearing, and speaking; (3)

understanding, carrying out, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). Accordingly, the severity of an impairment is determined by the limitations imposed by the impairment, and not merely by diagnosis of the impairment. *Ellis v. Comm'r,* 11-CV-1205, 2012 WL 5464632, at *4 (N.D.N.Y. Sept. 7, 2012) (citing *Coleman v. Shalala,* 895 F. Supp 50, 53 [S.D.N.Y. 1995]); *see also McConnell v. Astrue,* 03-CV-0521, 2008 WL 833968 (N.D.N.Y. Mar. 27, 2008).

### i. Obesity

"Obesity is not in and of itself a disability." *Yablonski v. Comm'r of Soc. Sec.*, 03-CV-0414, 2008 WL 2157129, at *6 (N.D.N.Y. Jan. 31, 2008) (citing, *inter alia,* SSR 02-1p, 2002 WL 34686281, at *4 [Sept. 12, 2002]). SSR 02-1p provides that, as with any other medical condition, the SSA "will find that obesity is a 'severe' impairment when, alone or in combination with other medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-1p, 2002 WL 34686281, at *4. Pursuant to SSR 02-1p, the SSA undertakes "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." *Hulbert v. Comm'r,* 06-CV-1099, 2009 WL 2823739, *11 (N.D.N.Y. Aug. 31, 2009). "SSR 02-1p notwithstanding, an ALJ is not obligated to single out a claimant's obesity for discussion in all cases." *Hulbert*, 2009 WL at *11 (internal citations and quotation marks omitted).

Here, Plaintiff's disability reports did not identify her obesity as a disabling impairment, however Plaintiff testified that her weight has "probably" been a problem that contributed to her pain or other medical issues. (T. 60, 178-191, 214-23. ) Additionally, multiple treating and

13

examining sources diagnosed Plaintiff with obesity, including Dr. Wassef, Dr. Luebbers, Dr. Ganguly, and Mr. Delaportas. (T. 364, 453-57, 490, 500.)

Defendant correctly notes that the Second Circuit has found that an ALJ adequately considered a plaintiff's obesity when the ALJ considered opinions from treating and examining physicians who were aware of the plaintiff's obesity. *See Talavera v. Astrue*, 500 F. App'x 9, 11 (2d Cir. 2012) (finding that the ALJ adequately considered a plaintiff's obesity when the ALJ considered medical opinions from physicians who were aware of the plaintiff's obesity and opined that it caused no more than mild limitations on the plaintiff's functional abilities); *Drake v. Astrue,* 443 643 F. App'x 653, 657 (2d Cir. 2011) (finding that an ALJ implicitly considered Plaintiff's obesity by relying on medical reports that repeatedly noted the plaintiff's obesity and provided an overall assessment of the plaintiff's work-related limitations).

However, here, the record does not contain a complete opinion of Plaintiff's functional limitations from an acceptable medical source. Accordingly, the ALJ should consider the severity of Plaintiff's obesity, as appropriate, based on a fully developed record upon remand.

### ii. Migraine Headaches

A review of the record indicates that Dr. Luebbers consistently diagnosed Plaintiff with migraines which he treated with prescription medication, including on three dates of service since Plaintiff's alleged onset date. (T. 296-97, 301, 453-57.) Moreover, on June 19, 2012, Dr. Wassef diagnosed Plaintiff with migraine headaches and noted that Plaintiff reported that she felt nauseated, had severe pain behind her eyes, and experienced "wavy lines" in both eyes when she had migraines. (T. 360-64.)

At step two, the ALJ noted that the record contains evidence of Plaintiff's migraine headaches. (T. 21.) However, the ALJ noted that, other than Plaintiff's subjective complaints

14

reported to consultative examiner Dr. Wassef, "the record fails to address the claimant's reports to her treating sources regarding frequency, duration, triggers, or residuals of the migraines or how the migraines interfere with the claimant's functioning." (*Id.*) Yet the ALJ did not recontact Dr. Wassef for clarification, or to obtain a complete opinion of Plaintiff's functioning from Dr. Wassef or one of Plaintiff's treating sources. *See* 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1) (providing that an ALJ may recontact a medical source for clarification or to obtain additional information). Moreover, the current record lacks a complete opinion of Plaintiff's physical abilities and limitations from *any* acceptable medical source.

For the reasons discussed above in Part III.A. of this Decision and Order, this matter is being remanded for the ALJ to (1) reevaluate Plaintiff's RFC; (2) perform a new credibility analysis; and (3) reassess whether Plaintiff can perform her past relevant work or other existing work based on a fully developed record. Upon remand, the ALJ should first assess the severity of Plaintiff's obesity and reassess the severity of Plaintiff's migraine headaches, as appropriate, based upon a fully developed record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 19) is **<u>DENIED</u>**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: September 19, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge